# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 0 5 2023

F  TAMMY H. DOWNS, CLERK

By:_____
DEP CLERK

| | | |
|---|---|---|
| K.F. and A.F., | § | |
| Individually | § | |
| and as Parents and | § | |
| Next Friend of E.F., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| QUITMAN SCHOOL | § | CASE NO. 4:23cv628-KGB |
| DISTRICT, | § | |
| | § | |
| Defendant | § | |
| | § | |
| DENNIS TRUXLER, | § | |
| | § | |
| Defendant | § | |
| | § | This case assigned to District Judge Baker |
| MICHAEL STACKS, | § | and to Magistrate Judge Volpe |
| | § | |
| Defendant | § | |

## COMPLAINT

K.F. and A.F., Individually and as Parents and Next Friend of E.F., for

their Complaint state:

## I. SUMMARY OF CLAIMS

1.      K.F. and A.F. ("Parents") are the parents of E.F. Parents are the

prevailing party in proceedings under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. §1400, *et seq.*, on behalf of E.F.

and against the Quitman School District ("District"). Accordingly,

Count I of Plaintiffs' Complaint seeks to recover attorneys' fees and

costs from the District pursuant to 20 U.S.C. §1415(i)(3).

2.      Parents prevailed in proceedings under the IDEA, in part,

because the District violated the McKinney-Vento Act ("MVA"), 42

U.S.C. § 11301, *et seq.*, by unenrolling E.F. from school. The District

violated the MVA because Dennis Truxler, Superintendent, and

Michael Stacks, Assistant Superintendent, retaliated against Parents

and E.F. for asserting their rights under the MVA and for criticizing

the District, Truxler, and/or Stacks. Parents' and E.F.'s assertion of

their rights under the MVA and criticism of the District, Truxler, and/

or Stacks for their violations of the MVA were protected speech.

Accordingly, Counts II and III of Plaintiffs' Complaint seek to recover

compensatory and punitive damages from Truxler and Stacks for free

speech retaliation pursuant to 42 U.S.C. §1983 and the Arkansas

Civil Rights Act ("ACRA"), Ark. Code Ann. §16-123-101, *et seq.*,

respectively.

## II. VENUE AND JURISDICTION

3.      Parents and E.F. reside in Cleburne County, Arkansas.

4.      The District's principal place of business is located in Cleburne

County, Arkansas. *See* 20 U.S.C. §1391(b)(1), (c)(2).

5.      A substantial part of the events or omissions giving rise to

these claims occurred in Cleburne County, Arkansas. *See* 20 U.S.C.

§1391(b)(2).

6.      Cleburne County is in the Eastern District of Arkansas, Central

Division. *See* 28 U.S.C. §83(a)(1).

7.      This Court has jurisdiction of Parents' IDEA attorneys' fees

claim against the District pursuant to 20 U.S.C. §1415(i)(3).

8.     This Court has jurisdiction of Parents' and E.F.'s First

Amendment retaliation claims against Truxler and Stacks pursuant to

42 U.S.C. §1983, 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3).

9.     This Court has supplemental jurisdiction over Parents and E.F.'s

state law ACRA free speech retaliation claims against Truxler and

Stacks pursuant to 28 U.S.C. §1367.

## III.  STATEMENT OF FACTS

10.    E.F., age 7, is a child with a disability as defined by the IDEA.
*See* 20 U.S.C. §1401(3).

11.    During the summer of 2022, Parents sold their home in

Greenbrier, Arkansas, and purchased land in Quitman Arkansas with

the intent to move to Quitman.

12.    On or about July 20, 2022, A.F. ("Mother") and two children

including E.F. went to the District to enroll E.F. and her other child

and to discuss E.F.'s special education needs. Misty Atkin, a special

education teacher, met with Mother, heard E.F.'s needs, and gave

them a tour of the school.

13.    Mother told the District that Parents planned to build a house
in Quitman but in the interim would be living with friends that
resided in the District. The District told Mother that E.F. could enroll
as a student in the District.

14.    On August 8, 2022, the District scheduled an Individualized
Education Program ("IEP") meeting and Mother attended. At the
meeting, the District adopted E.F.'s IEP prepared by the Greenbrier
School District with some modifications.

15.    E.F. started school in the District on August 11, 2022.

16.    On August 15, 2022 (Monday of the first full week of school),
the District failed to manage E.F.'s behavior resulting in him being
traumatized. The school Principal, Megan Griffin, called Parents and
asked how to calm E.F. because nothing in his IEP was working.

17.    On August 18, 2022, the District scheduled an IEP meeting
and asked Parents to consent to a Functional Behavioral Assessment
("FBA") for the purpose of developing an appropriate Behavior
Intervention Plan ("BIP"). Parents consented.

18.   On August 19, 2022, Stacks called the Parents telling them their children, including E.F., were unenrolled from the District due to a lack of residency in the district.

19.   E.F. missed school on Friday, August 19, and Monday, August 22, 2022.

20.   Parents contacted the Arkansas Department of Education ("ADE") for guidance and criticized the District for unenrolling their children from school.

21.   On August 22, 2022, ADE advised Truxler that Parents and E.F. qualified as homeless and that the MVA required the District to reenroll Parents' children, including E.F.

22.   The District reenrolled E.F., and E.F. attended school on August 23, 2022.

23.   On August 23, 2022, Truxler sent an email to ADE telling them, among other things, that Parents "have repeatedly spewed out lots of misinformation!" **H-23-13**, **PE-270**. He also accused Parents of

giving the District a "false address" and called Parents' children "illegal students." *Id.*

24.    Truxler's email makes clear that he had been told what Parents said to ADE about the District. He wrote, "This mother calls you all at the ADE and makes it sound like Quitman doesn't care about kids." *Id.*

25.    Truxler's email also makes clear that he has an animus toward Parents. He said, "What we don't care for is parents that are manipulative and that will say anything to get what they want." *Id.* Truxler concluded, "We notified [Mother] and told her we would gladly enroll her children. But I do not believe they will not be staying in a temporary shelter, (sic) I think this (sic) just more of their way of manipulating the system." *Id.*

26.    Stacks was copied with Truxler's August 23, 2022, email to ADE. *Id.*

27.    On August 25, 2022, Truxler sent another email to ADE to report Parents' children were reenrolled. **H-23-13**, **PE-271**. It stated:

The children of the family that manipulated and told untruths to enroll in the Quitman School District were enrolled Monday.

They are living in a brand new camper on land in the Guy School District not the Quitman School District. Also, one of the many untruths that were told was that they sold their house due to "Economic Hardship."

They own 3 vehicles, purchased land for $94,000.00 with the intention of building a new home.

Economic Hardship, UMM?

*Id.*

28.     Stacks was copied with Truxler's August 25, 2022, email to ADE. *Id.*

29.     With a clear directive from ADE to enroll E.F., Truxler and Stacks conspired to threaten Parents by suggesting Parents were committing a crime by "knowingly provid[ing] false information for purpose of school enrollment." **H-23-13**, **PE-273**. Upon information and belief, Truxler and Stacks intended to scare Parents into withdrawing their children from the District.

30.     First, on August 29, 2022, Stacks emailed the Guy Perkins School District reporting that Parents were living in a "travel trailer"

in the Guy Perkins School District but were attending school in the

District because Parents "have not been honest with us about their

residency." **H-23-13**, **PE-272**.

31.     Upon information and belief, Stacks hoped to prompt the Guy

Perkins School District to initiate an investigation into the residency

of Parents and E.F. that could ultimately lead to E.F. being barred

from attending the District. *See* ADE Rules Governing Appeals

Involving Student Residency Disputes Between School Districts,

§3.02.[1]

32.     Also on August 29, 2022, Stacks hand delivered a letter Truxler

sent Parents challenging the ADE's decision. Stacks did this for the

purpose of intimidation - throwing the letter inside the back of the

car when E.F. got into the car. As Parents understood the letter, the

District was unenrolling their children for a second time and

threatening to have the Parents arrested. Truxler wrote:

_____

[1] It provides, "A student who is determined to be unlawfully attending a school not
within the student's resident district shall be immediately barred from attending the
nonresident school district."

This communication is to inform you that your current resident of 719 Highway 25 Quitman is in the Guy Perkins School District. We've alerted Guy Perkins (sic) District and the Department of Education of your residency.

Please know that we are disputing your claim that the Quitman School District is your district of origin because you enrolled your children in our district under a false pretense. You continue to be dishonest about your residency, and we believe, are manipulating the McKinney-Vento Homeless Assistance Act with claims of economic hardship.

We are committed to following the law including our options for dispute resolution, and **the reporting of individuals who knowingly provide false information for purposes of public school enrollment**.

**H-23-13**, **PE-273** (emphasis supplied).

33.   E.F. did not attend school on August 30, August 31, and part of

the day on September 1, 2022.

34.   On August 31, 2022, the District blocked Parents from

accessing its Facebook page.

35.   Parents used social media to criticize the District, Truxler, and/

or Stacks for retaliating against them by blocking them from

accessing the District's Facebook page.

36.    Parents used social media to criticize the District, Truxler, and/ or Stacks for retaliating against them by blocking them from accessing the District's Facebook page.

37.    On September 1, 2022, Parents were told the District had reenrolled E.F. and he attended half of that day.

38.    On September 2, 2022, the District unblocked Parents from accessing the District's Facebook page - with Stacks telling them they were "unblocked for now.".

39.    On September 8, 2022, while in the car rider line to pickup her two children, Stacks called the Parent and told her their children would be unenrolled effective immediately because they do not reside in the District.

40.    September 9, 2022, the District unenrolled E.F. He missed another three days of school including a field trip and Grandparents' Day (his grandmother planned to attend and E.F. was eagerly anticipating).

41.   Parents used social media to criticize the District, Truxler, and/ or Stacks for violating the MVA.

42.   On September 13, 2022, ADE ordered the District to enroll Parents' children and to provide E.F. the special education services on his IEP.

43.   On September 14, 2022, the District reenrolled E.F. Since that time, Parents' children, including E.F., have been enrolled in the District without interruption.

44.   On that date, Mother spoke with Stephanie Davis, Counselor, and Stacks telling them the family had a camper on their property with a generator for electricity, water tanks, and a sewage disposal system.

45.   Later the same day, both Davis and Stacks reported Parents to the Arkansas Department of Human Services for child maltreatment in retaliation for Parents' advocating for their rights under the MVA and/or IDEA and their criticism of the District, Truxler, and/or Stacks.

46.    Upon information and belief, Davis and Stacks acted out of animus toward Parents and a petty desire to cause them emotional distress and mental anguish. But for Parents asserting their rights under the MVA and criticizing the District, Truxler, and/or Stacks, Davis and Stack would not have reported Parents for child maltreatment.

47.    On September 20, 2022, Parents filed a due process complaint with ADE alleging the District denied E.F. a free appropriate public education ("FAPE") as required by the IDEA.

48.    ADE identified the case as H-23-13 and assigned the case to an impartial due process hearing officer ("HO")

49.    The HO heard the testimony of 12 witnesses over four days.

50.    On April 3, 2023, the HO issued her Final Decision and Order finding in favor of Parents and awarding compensatory physical therapy, occupational therapy, and speech therapy.

51.    The HO's Final Decision and Order in H-23-13 is attached

hereto as **Exhibit A** and incorporated by reference pursuant to Rule

10(c) of the Federal Rules of Civil Procedure.

52.    The HO found the Stacks' and Truxler's testimony at the due

process hearing to be "disingenuous." **Exhibit A, p. 18**. The HO

concluded, "[I]t is clear from Stacks' and Truxler's words and actions

unenrolling on the basis of residency was their primary objective,

regardless of [E.F.'s] IEP and in the fact of [ADE's] directives." *Id.*

53.    At all times relevant hereto, Parents' and E.F.'s right to be free

from retaliation by government officials for the exercise of their free

speech rights was clearly established. *See Rinne v. Camden Cnty.*, 65

F.4th 378, 383 (8th Cir. 2023) (citing *Hartman v. Moore*, 547 U.S. 250,

256 (2006) and *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014)).

## IV.  CLAIMS

### Count I – IDEA Attorneys' Fees and Costs

54.    Parents are the prevailing party in an action or proceeding under the IDEA and may be awarded reasonable attorneys' fees and costs from the District. *See* 20 U.S.C. §1415(i)(3)(B)(i).

55.    The HO's decision is dated April 3, 2023. The District has 90 days to appeal the HO's decision, until July 2, 2023. If the District does *not* appeal, Parents' IDEA attorneys' fees and costs claim will be ripe at that time and Parents will move for partial summary judgment.

56.    If the District does appeal, Parents will move for IDEA attorneys' fees and costs within 14 days of this Court's decision affirming the HO's decision. *See* Local Rule 54.1.

### **Count II – First Amendment Retaliation**

57.    Parents, individually and on behalf of E.F., seek relief pursuant to 42 U.S.C. §1983, from Truxler and Stacks, individually, for their retaliation against Parents and E.F. in violation of their rights under the First and Fifth Amendments of the U.S. Constitution.

58.    Parents engaged in protected activity by advocating for E.F.'s rights under the MVA and IDEA.

59.    Truxler and Stacks took adverse action against Parents and E.F. as described above.

60.    Parents' protected activity was a motivating factor in Truxler's and Stacks' decision to take adverse action against Parents and E.F.

61.    At all relevant times, Truxler and Stacks acted under color of state law.

62.    As a direct and proximate result of Truxler's and Stacks' First Amendment retaliation, Parents and E.F. have incurred and will incur in the future non-pecuniary losses for which they should be compensated.

63.    Parents and E.F. have suffered non-pecuniary losses in the form of past and future emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

64.    Parents respectfully requests compensatory damages for

Parents' and E.F..'s non-pecuniary losses in an amount determined by

a jury.

65.    Truxler's and Stacks' conduct in this case was motivated by evil

motive or intent and/or involved reckless or callous indifference to

the federally protected rights of Parents and E.F., and accordingly,

Parents and E.F. should be awarded punitive damages from Truxler

and Stacks to punish them and to deter others from engaging in

similar behavior.

## **Count III – ACRA Free Speech Retaliation**

66.    Parents, individually and on behalf of E.F., seek relief pursuant

to the Arkansas Civil Rights Act of 1993, Ark. Code Ann.

§§16-123-105(a), 107(a)(2), and 108(b), from Truxler and Stacks,

individually, for their retaliation against Parents and E.F. in violation

of their rights under the Free Speech Clause of the Arkansas

Constitution, Art. 2, §4 – Freedom of Assembly—Petition, that

provides, "The right of the people peaceably to assemble, to consult

for the common good; and to petition, by address or remonstrance[2],

the government, or any department thereof, shall never be

abridged."

67.    Retaliation is prohibited intentional discrimination. *Jackson v.*

*Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation

is, by definition, an intentional act. It is a form of 'discrimination'

because the complainant is being subjected to differential

treatment.").

68.    Parents engaged in protected activity by advocating for E.F.'s

rights under the Arkansas statutes and rules requiring school districts

to comply with the MVA and IDEA.

69.    Truxler and Stacks took adverse action against Parents and E.F.

as described above.

70.    Parents' protected activity was a motivating factor in Truxler's

and Stacks' decision to take adverse action against Parents and E.F.

─────────────

[2] A forcefully reproachful protest.

71.    At all relevant times, Truxler and Stacks acted under color of

state law.

72.    As a direct and proximate result of Truxler's and Stacks' free

speech retaliation, Parents and E.F. have incurred and will incur in the

future non-pecuniary losses for which they should be compensated.

73.    Parents and E.F. have suffered non-pecuniary losses in the form

of past and future emotional pain, suffering, inconvenience, mental

anguish and loss of enjoyment of life.

74.    Parents respectfully request compensatory damages for

Parents' and E.F..'s non-pecuniary losses in an amount determined by

a jury.

75.    If Parents and E.F. prove a violation of the ARCA, they are

entitled to both compensatory and punitive damages. Arkansas

Code Annotated section 16-123-107(b) provides, "Any person who is

injured by an intentional act of discrimination in violation of

subdivisions (a)(2)-(5) of this section **shall** have a civil action in a court

of competent jurisdiction to enjoin further violations, to recover

***compensatory and punitive damages***, and, in the discretion of the

court, to recover the cost of litigation and a reasonable attorney's

fee." (emphasis supplied).

76.    Alternatively, Truxler's and Stacks' conduct in this case was

motivated by evil motive or intent and/or involved reckless or callous

indifference to the Arkansas constitutionally protected rights of

Parents and E.F., and accordingly, Parents and E.F. should be

awarded punitive damages from Truxler and Stacks to punish them

and to deter others from engaging in similar behavior.

## V.  RELEIF

Parents pray for the following relief:

1)  The District be ordered to pay Parents their IDEA attorneys' fees

and costs as the prevailing party in proceedings under the IDEA;

2)  Truxler and Stacks be ordered to pay Parents and E.F.

compensatory damages for their non-pecuniary losses in the form of

past and future emotional pain, suffering, inconvenience, mental

anguish and loss of enjoyment of life;

3) Truxler and Stacks be ordered to pay Parents and E.F. punitive

damages to punish them and to deter others from engaging in similar

behavior;

4) Truxler and Stacks be ordered to pay Parents and E.F. their

attorneys' fees and costs expended herein; and,

5) Parents and E.F. be awarded all other just and proper relief to

which they may be entitled under the law and the facts established at

the trial of this cause.


Respectfully submitted,

Theresa L. Caldwell
Arkansas Bar Number 91163

**CALDWELL LAW OFFICE**
14 Alban Lane
Little Rock, Arkansas 72223
Tel.: 501-414-0434
E-mail: tlcatty@gmail.com

*Attorney for Plaintiffs*

**ARKANSAS DEPARTMENT OF EDUCATION**
**SPECIAL EDUCATION UNIT**

**XXXXXXXXXXXXXXX,**
**AS PARENTS OF**
**XXXXXXXXXXXX, STUDENT**
      **Petitioner/Parents**

**VS.**                                                    **NO. H-23-13**

**QUITMAN SCHOOL DISTRICT,**
      **Respondent/District**

## HEARING OFFICER'S FINAL DECISION AND ORDER

### I.
### ISSUE PRESENTED

Whether the Quitman School District (hereinafter "District" or "Respondent"), when it

unenrolled XXXXXXXXXXXX (hereinafter "Student") from school multiple times between

August 11, 2022, and September 20, 2022, denied Student a free, appropriate, public education

(hereinafter "FAPE") in violation of the Individuals with Disabilities in Education Act of 2004,

20 U.S.C. §§ 1400-1485, as amended (hereinafter referred to as "IDEA").

### II.
### NON-JUSTICIABLE ISSUES

#### A. Disability Discrimination Claims

Parents also allege that the District's conduct constitutes disability discrimination in

violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the

Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165. This Hearing Officer has no

**EXHIBIT A**

jurisdiction over disability discrimination claims.[1] Accordingly, to the extent Parents' due

process complaint raises disability discrimination claims, those claims are DISMISSED.

### B. McKinney-Vento Act Violation Claim

Parents allege that District violated the McKinney-Vento Homeless Assistance Act[2]

("McKinney-Vento").[3] The only enforcement mechanism for a McKinney-Vento violation is

filing a claim in federal court under 42 U.S.C. § 1983.[4] Accordingly, to the extent Parents' due

process complaint raises a McKinney-Vento claim, that claim is DISMISSED.

### III.
### PROCEDURAL HISTORY

On September 20, 2022, the Arkansas Department of Education (hereinafter referred

to as "Department") received from XXXXXXXXXXX, the parents and legal guardians of

Student (hereinafter referred to as "Parents" or singly as "Father" or "Mother" where

appropriate), a request to initiate due process hearing procedures. Parents requested the hearing

because they believed that District failed to comply with the IDEA, as well as regulations set

forth by the Department, by failing to provide Student with appropriate supports and services to

address his learning and behavioral disabilities related to autism.[5]

In response to the Parents' request for a due process hearing, the Department assigned the

case to the undersigned impartial Hearing Officer. A Joint Motion to Continue was granted, and

---

[1] *See* ADE Spec. Ed. Rules §10.01.22.1.

[2] 42 U.S.C. §§ 11431-11435, as reauthorized in December 2015 by the Every Student Succeeds Act (ESSA).

[3] Due Process Complaint, pp. 10-13.

[4] *Holmes–Ramsey v. District of Columbia*, 747 F.Supp.2d 32, 40-41 (D. D.C. 2010).

[5] *See* Parents' Complaint.

the due process hearing was scheduled for three days to begin on January 17, 2023.[6] Testimony was heard on January 17, 2023, January 18, 2023, January 19, 2023 and February 6, 2023.[7]

Having been given jurisdiction and authority to conduct the hearing pursuant to the IDEA, and Arkansas Code Annotated §§ 6-41-202 through 6-41-223, Cheryl L. Reinhart, J.D., Hearing Officer for the Department, conducted a closed impartial hearing. Present for the hearing were Parents and their attorney Ms. Theresa Caldwell, of Caldwell Law Office, Little Rock, Arkansas; Ms. Jennifer Hennessey, District LEA Supervisor; and the District's attorney, Mr. Jay Bequette, of Bequette, Billingsley, and Kees, P.A., Little Rock, Arkansas.

The following witnesses testified in this matter: Kobie McKnight, first grade (general education) teacher, Quitman Elementary School; Megan Griffin, Principal, Quitman Elementary School; Misty Atkins, special education teacher, Quitman Elementary School; Paige Stanton, speech language pathologist; Karly Wilcox, occupational therapist; Stephanie Davis, counselor, Quitman Elementary School; Lissa Pray, physical therapist; Dennis Truxler, Superintendent, Quitman School District; Michael Stacks, Assistant Superintendent, Quitman School District; Jennifer Hennessey; and Parents.[8]

Both parties requested to provide post-hearing briefs in lieu of closing arguments. The deadline for providing briefs was February 27, 2023, and briefs were filed on that day.[9]

---

[6] *See* Order Granting Continuance and Rescheduling Pre-Hearing Conference and Due Process Hearing.

[7] *See* Transcript, generally, Vols. I-IV.

[8] *Id.*

[9] *See* Order Extending Deadline for Filing Briefs.

# IV.
# FINDINGS OF FACT

Student is a seven-year-old male who was diagnosed with autism spectrum disorder

("ASD") at age three by Dr. Angela Scott, UAMS Denver Developmental Center, in 2018.[10]

Student was subsequently evaluated in 2020 (age 4-5) and the following results were reported:

1) <u>Greenbrier School District evaluation, June 2020</u>: Composite Intelligence Score of 88 on the Reynold's Intellectual Assessment Scales-2 (low range); Adaptive Behavior Score composite standard score of 78 on the Vineland, with deficits in communication and socialization (mild); low in written expression on the Kaufman Test of Educational Achievement Third Edition, with a strength in letter/word identification;

2) <u>Pediatrics Plus physical therapy evaluation, June 19, 2020</u>: Score of -2.00 on the Peabody Developmental Motor Scales-2 (delay in locomotion);

3) <u>Pediatrics Plus speech evaluation, October 28, 2020</u>: on the CELF-P2 scores of SS 5 sentence structure, SS 8 word structure, SS 10 expressive vocabulary, SS 6 concepts and following directions, SS 6 recalling sentences, SS 8 word classes-receptive, SS 6 word classes-expressive, SS 86 core language, SS 77 receptive language, SS 89 expressive language, SS 87 language content, SS 79 language structure, SS 71 SSIS social skills scale, and SS 104 CAAP-2;

4) <u>Pediatrics Plus occupational therapy evaluation, November 2, 2020</u>: Visual motor skills 5th percentile (moderate delay) and fine motor skills 1st percentile (severe delay) on the Miller Function and Participation Scales; self-care raw score 48/100 and 45/48 social on the Pediatric Evaluation of Disability Inventory (both severe deficits); no areas in the typical range on the Sensory Profile 2 (by Student's mother) or on the Sensory Profile 2 School Companion.[11]

Student's autism also impacts his health, weight, sensory needs, and behavior. To address

his disabilities, Student received Applied Behavioral Analysis services in his home for the full

three years of the program.[12] Mother testified that Student has difficulty with being introduced to

new foods, and not realizing when he is no longer hungry (thus thinks he is hungry all the time).

---

[10] Parent DPH Exhibit, pp. 78-90.

[11] Parent DPH Exhibit, p. 22.

[12] Tr. Vol. IV, pp. 131-133.

He is overweight, pre-diabetic, and takes medication for acid reflux.[13] Student has used a sensory vest and Karly Wilcox, Student's occupational therapist, ordered a compression shirt for him. Wilcox has also used joint compressions when needed with Student.[14]

## 2021-2022 School Year - Greenbrier

In the 2021-2022 school year, Parents resided in Greenbrier, Arkansas, and Student attended kindergarten at Greenbrier School District. Greenbrier School District determined that Student was eligible for special education and related services under the IDEA and developed an individualized education program (IEP) (the "2021-2022 Greenbrier IEP").[15] Under the 2021-2022 Greenbrier IEP, Student's primary placement was in the regular education classroom, and supported by a one-to-one paraprofessional.[16]

## 2022-2023 School Year - Greenbrier

Greenbrier School District conducted an annual review conference and developed an IEP for the 2022-2023 school year (the "2022-2023 Greenbrier IEP").[17] Under the 2022-2023 Greenbrier IEP, Student's primary placement continued to be 89% of his time in the general education setting with a one-to-one aide.[18] The 2022-2023 Greenbrier IEP also provided for:

(a) 30 minutes of speech therapy twice a week to improve his "conversational speech skills";

(b) 60 minutes of physical therapy per week "to address global strengthening, endurance, bilateral coordination, and motor planning skills";

---

[13] Tr. Vol. IV, pp. 184-188.

[14] Tr. Vol. II, pp. 61-67.

[15] Parent DPH Exhibit, pp. 21-43.

[16] Parent DPH Exhibit, p. 5.

[17] Parent DPH Exhibit, pp. 2-20.

[18] Parent DPH Exhibit, p. 17.

(c) 60 minutes of occupational therapy per week to work on "sensory processing, self-regulation, body awareness/motor planning, core strengthening/stability, social skill, following multi-step directions, fine motor skills, and visual motor skills"; and

(d) Supplementary aids, services, or modifications including:

- one-to-one para;
- emphasis on major points;
- preferential seating;
- short instructions;
- noise-cancelling headphones when needed;
- visual aids and visual schedule; and
- daily menu and nutrition plan.[19]

**2022-2023 School Year - Quitman**

Parents testified that during the summer of 2021, they sold their home in Greenbrier and initiated a purchase of land in Quitman with the intent to move to Quitman.[20] In anticipation of the Greenbrier residence closing, Mother, with her two children, came to Quitman School District to discuss enrolling their children and Student's special education needs.[21] On that day, Misty Atkin, special education teacher, met with Mother, discussed Student's special needs, and gave them a tour of the school.[22] When District questioned Parents about their residency, Parents assured District that they planned to build a residence on land purchased in Quitman, but in the interim would be living with friends that reside in Quitman.[23] On July 24, 2022, relying on that assurance, District stated that it would enroll Student.[24]

---

[19] Parent DPH Exhibit, pp. 1-6.

[20] Tr. Vol. IV, pp. 203-205, 208-211.

[21] *Id.* References to "children" in this order include Student and his older sister.

[22] Tr. Vol. IV, p. 151.

[23] Parent DPH Exhibit, p. 266.

[24] *Id.*

On August 8, 2022, District again met with Parents, at which time the District adopted

the 2022-2023 Greenbrier IEP with the following modifications (hereafter referred to as the

"2022-2023 Quitman IEP" or "IEP"):

- 60 minutes per week of physical therapy was changed to 90 minutes;
- 30 minutes of speech therapy twice per week was changed to 60 minutes per week;
- The amount of time in general education setting changed from 89% to 88%; and
- Goal 8 for school age literacy was added.[25]

Misty Atkin, special education teacher at Quitman Elementary School, testified that she provided

indirect services related to behavior on as "if-needed" basis.[26]

Student began attending school in Quitman on August 11, 2022.[27] On August 15, 2022

(Monday of the first full week of school), Student was yelling, leaving the classroom, and

behaving in a very agitated manner, making it difficult for his para to calm him.[28] Principal

Griffin called Mother for tips on how to calm Student, as the strategies identified on the IEP

were not working.[29] The District held an "emergency" IEP meeting on August 18, 2022, at which

Parent was present.[30] Parent consented to a functional behavior analysis and a CIRCUIT

(Centralized Intake and Referral / Consultant Unified Intervention Team) referral.[31]

On August 19, 2022 (Thursday of the first full week of school), Stacks emailed Parents

advising that the District would unenroll their children due to a lack of residency in the district.[32]

---

[25] Parent DPH Exhibit, pp. 1-20.

[26] Tr. Vol. I, pp. 141-143.

[27] Tr. Vol. I, pp. 14-15.

[28] Tr. Vol. I, pp. 137-138.

[29] Parent DPH Exhibit, p. 256. Findings of fact regarding Parents' residency are relevant only to the issues of whether District provided a FAPE under the IDEA and not identified to a determination concerning an alleged McKinney-Vento violation, which as previously discussed in Section II.B. of this decision is not within this hearing officer's jurisdiction.

[30] Tr. Vol. 1, pp. 133-134.

[31] Parent DPH Exhibit, p. 75-76.

[32] Parent DPH Exhibit, p. 267.

District did in fact unenroll Student on August 19, 2022, and Student did not attend school that day or on August 22, 2022.[33] Parents contacted the Department for assistance, and on August 22, 2022, the Department advised Superintendent Truxler that (1) Parents qualified as homeless, (2) District was the school of origin under McKinney-Vento, and (3) District must immediately enroll the children.[34] District reenrolled Student on August 23, 2022.[35]

District challenged the designation as school of origin under McKinney-Vento in a letter to Parents dated August 29, 2022.[36] Parents misread the letter to mean that District would unenroll Student again, and accordingly did not send Student to school on August 30, 2022, August 31, 2022, and part of the day on September 1, 2022.[37] In reality, the letter did not state that Student would be unenrolled, and District did not actually unenroll him at that time.[38] District did, however, block Parents from access to the district's Facebook page from August 31, 2022, to September 2, 2022.[39] Believing that Student was subsequently "reenrolled," Parents returned Student to school for a partial day on September 1, 2022.[40]

On the afternoon of September 8, 2022, Parents received a copy of a letter addressed to their attorney that stated, "the District intends to drop the Students from enrollment effective immediately since they do not reside in the District."[41] On September 9, 2022, District did in

---

[33] Parent DPH Exhibit, p. 222F.

[34] Parent DPH Exhibit, pp. 269-270.

[35] Parent DPH Exhibit, p. 222F.

[36] Parent DPH Exhibit, p. 273.

[37] Tr. Vol. III, pp. 252-253; Parent DPH Exhibit, p. 222F (TRIAND report), p. 224, p. 226B (Student Attendance Report), and p. 259 (text from Mother stating, "we got the kids back in school on Tuesday.")

[38] Parent DPH Exhibit, p. 222F. Evidence showed that Student was counted absent for those days but not unenrolled. Parent DPH Exhibit, p. 222F (TRIAND report), p. 226B (Student Attendance Report).

[39] Tr. Vol. III, pp. 196-197; Parent DPH Exhibit, p. 328. Stacks was unable to provide a reason for blocking the Facebook access, but access was restored on September 2, 2022, at Parents' request. Tr. Vol. III, pp. 196-197.

[40] Tr. Vol. IV, pp. 211-212.

[41] Parent DPH Exhibit, pp. 282-283.

fact unenroll Student resulting in Student missing another three days of school, which included a field trip and grandparents' day.[42]

The Department, in a letter dated September 13, 2022, again stated that District was the "school of origin" under McKinney-Vento and directed District to reenroll Student and "provide services." [43] Stacks testified that he reenrolled Student on September 14, 2022, because Parents had established residency, and that Student has been enrolled since without interruption.[44]

Therefore, as a direct result of being unenrolled or believing Student was unenrolled, Student missed the following days of school:

- Friday, 8/19/22[45]
- Monday, 8/22/22
- Tuesday, 8/30/22
- Wednesday, 8/31/22
- Thursday (partially), 9/1/22
- Friday, 9/9/22 (also missed field trip)
- Monday, 9/12/22
- Tuesday, 9/13/22

Parents assert that Student was also absent on August 23, 2022, due to being unenrolled.[46] However, District reenrolled Student on that day, and attendance records do not show an absence.[47] Student received physical therapy on that day.[48] Therefore, this Hearing Officer finds that Student was not absent on August 23, 2022.

---

[42] Tr. Vol. III, p. 221

[43] Parent DPH Exhibit, p. 284.

[44] Tr. Vol. IV, pp. 63-64.

[45] Tr. Vol. I, pp. 96-97; Parent DPH Exhibit, p. 222F.

[46] Parent DPH Exhibit, p. 223.

[47] Parent DPH Exhibit, p. 222F (TRIAND report), p. 226B (Student Attendance Report).

[48] Parent DPH Exhibit, p. 166.

To satisfy District's residency requirement, Parents finally moved onto the land they purchased in Quitman.[49] On September 14, 2022, the students returned to school and Mother, attempting to request assistance from the district, advised Stephanie Davis (counselor and McKinney-Vento liaison) and Stacks that the family was living in a camper, without having access to utilities, but with a water holding tank, tanks for holding and disposing of sewage, and a generator for electricity.[50] On the same day, Davis and Stacks, respectively, filed a separate report of child maltreatment for possible neglect based solely on Mother's statement about the lack of utilities. Both testified that they believed the reports were required of them as mandated reporters.[51]

During the period of this due process complaint, District representatives made numerous statements to Parents and others regarding Parents' honesty about their residency, some of which are:

- "…[Parents] have repeatedly spewed out lots of misinformation!"[52]
- "What we don't care for is parents that are manipulative and that will say anything to get what they want."[53]
- "The children of the family that manipulated and told untruths to enroll in the Quitman School District were enrolled Monday."[54]
- "Also, one of the many untruths that were told was that they sold their house due to economic hardship."[55]
- "…you enrolled your children under false pretense. You continue to be dishonest about your residency, and we believe, are manipulating McKinney-Vento … with claims of economic hardship." [56]

---

[49] Tr. Vol. III, pp. 220-221.

[50] Tr. Vol. III, pp. 218-221. Mother also testified that she had ordered a port-a-potty and the family had bottled water. Tr. Vol. IV, pp. 227-229.

[51] Tr. Vol. II, pp. 157-160 (Davis testimony) and Tr. Vol. IV, pp. 64-66 (Stacks testimony).

[52] Parent DPH Exhibit, p. 270, Truxler 8/23/22 email to Department leadership.

[53] *Id.*

[54] Parent DPH Exhibit, p. 271.

[55] *Id.*

[56] Parent DPH Exhibit, p. 273, Truxler 8/29/22 letter to Parents.

- "[Parents] have not been honest with us about their residency."[57]


## Related Services

From August 15, 2022, to September 20, 2022, Student received or missed the following

services under his IEP[58]:

### 8/15 - 8/19 (unenrolled two days):

- 45/90 minutes physical therapy, a deficit of 45 minutes
- 60/60 minutes of occupational therapy
- 0/60 minutes of speech therapy, a deficit of 60 minutes

### 8/22 - 8/26 (unenrolled one day):

- 45/90 minutes physical therapy, a deficit of 45 minutes
- 60/60 minutes of occupational therapy
- 30/60 minutes of speech therapy, a deficit of 30 minutes

### 8/29 - 9/2 (absent two days and one partial day):[59]

- 30/90 minutes physical therapy, a deficit of 60 minutes
- 30/60 minutes of occupational therapy, a deficit of 30 minutes
- 30/60 minutes of speech therapy, a deficit of 30 minutes

### 9/5 – 9/9 (one holiday and one day unenrolled):

- 30/90 minutes physical therapy, a deficit of 60 minutes
- 60/60 minutes of occupational therapy
- 0/60 minutes of speech therapy, a deficit of 60 minutes

### 9/12 – 9/16 (two days unenrolled and one early release day):

- 30/90 minutes physical therapy, a deficit of 60 minutes
- 60/60 minutes of occupational therapy
- 0/60 minutes of speech therapy, a deficit of 60 minutes

---

[57] Parent DPH Exhibit, p. 272 – Stacks 8/29/22 email to Joe Fisher, Guy Perkins School District.

[58] Parent DPH Exhibit, Vol. I, p. 120 (speech language therapist notes); pp. 146-154 (occupational therapist notes), and. pp. 166-167 (physical therapist notes).

[59] Student's absences on August 30-September 1 are counted here for the reasons stated in this order at Section V, Conclusions of Law and Discussion.

9/19 – 9/23:

Services are not included for this week because the Due Process Complaint was filed on 9/20, a Tuesday.

## Student's Progress

There is scant evidence of Student's academic progress. At the beginning of the 2022-2023 school year, test scores indicated some academic regression, which District attributes to the summer break.[60]  Student's teacher, Kobie McKnight, described him as academically "very bright" and stated that when he would leave the classroom during behavioral outbursts, he was able to quickly pick back up where he left off.[61] Student's one-to-one para would follow him out of the classroom to help him regulate his behavior and then "catch him up" when they returned to the classroom.[62] McKnight testified that Student has a good relationship with his para – he likes her and she is very consistent.[63] McKnight believed that Student progressed academically over the first six weeks, but did not have supporting MAPS testing data until 2023.[64] Father testified that he believed Student was making progress academically.[65]

Likewise, there is little evidence – other than anectodal – concerning Student's progress in speech therapy, physical therapy, and occupational therapy during the time period of this due process complaint. Student exhibited yelling, hitting, kicking, and biting during the first six weeks of the 2022-2023 school year. Paige Stanton, the speech therapist, testified that she was currently evaluating Student. She was unable to answer questions about how Student's autism

---

[60] Tr. Vol. I, p. 78.

[61] Tr. Vol. I, pp. 14, 77.

[62] Tr. Vol. I, pp. 51.

[63] Tr. Vol. I, pp. 81.

[64] Tr. Vol. I, p. 75.

[65] Tr. Vol. III, p. 236.

impacts his speech therapy sessions.[66] Although there are speech therapy progress notes, the notes begin in October, after the date covered by this due process complaint.[67] Stanton testified that from the beginning of school to the date of the hearing that Student has made "adequate progress." Karly Wilcox, occupational therapist, provided daily treatment notes,[68] but stated that there is no data collected and compiled for progress.[69] Wilcox described Student's progress on various goals and objectives as "very little progress," "some progress" and "pretty good progress,"[70] but believed he made "amazing" progress overall in his occupational therapy, given his diagnosis and "everything else that is going on." Lissa Pray, physical therapist, provided progress notes[71] and testified primarily about Student's progress after the date of the due process complaint.[72]

## Parent Participation

McKnight testified that Parents had not complained about being able to communicate with the district about Student. Parents were enrolled in Class DoJo, which gave both parties the ability to communicate real time, primarily with Student's para.[73] Parents received Daily Communication Sheets that were filled out by Student's para indicating how Student's day went.[74] Parents also had access to the district's Facebook page, but on August 31, 2022, District

---

[66] Tr. Vol. II, p. 23.

[67] *See* Parent DPH Exhibit, pp. 10A and 10B.

[68] Parent DPH Exhibit, pp. 146-155.

[69] Tr. Vol. II, p. 56.

[70] Tr. Vol. II, pp. 74-76.

[71] Parent DPH Exhibit, pp. 166-167.

[72] Tr. Vol. III, pp. 32-36.

[73] Tr. Vol. I, pp. 75-76.

[74] Tr. Vol. I, pp. 167-168; Vol. IV, pp. 243-244; Parent DPH Exhibit, pp. 168-173K.

blocked Parents from access to the Facebook page. Stacks was unable to provide a reason for

blocking access, and on September 2, 2022, Parents' access was restored at Parents' request.[75]

Parents testified that Student's behavior regressed during the first six weeks of school,

citing:

- Confusion and anxiety about his schedule
- Increased binge eating
- Getting upset more with family members
- No longer sleeping on his own
- Resisting taking a shower and, in particular, washing his hair
- Social and separation anxiety[76]

However, there is insufficient evidence to determine whether Student's behavioral regression is

linked to being unenrolled and reenrolled, or to the lack of stability in the family's residency

from July to September of 2022 and starting first grade in a new school, or to a combination of

all. Father testified that the behavioral issues were worse when Student was being unenrolled

and reenrolled, but conceded that such behavior could also be the result of Student adjusting to

the new school and to living in a camper.[77]

## V.
## CONCLUSIONS OF LAW AND DISCUSSION

The IDEA was enacted to ensure that all children with disabilities, including children

with disabilities who are homeless, have available to them a free appropriate public education (a

FAPE) that emphasizes special education and related services designed to meet their unique

needs...."[78].

---

[75] Tr. Vol. III, pp. 196-197.

[76] Tr. Vol. IV, pp. 203-204.

[77] T. Vol. III, p. 238-239.

[78] 20 U.S.C. § 1400(d)(1)(A).

A child is eligible for special education and related services under the IDEA if: (a) the child has a disability; and (b) because of the disability needs special education and related services. Autism is among the disabilities contemplated by the IDEA,[79] which defines it as:

> ...a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.[80]

The first obligation of a school district is to identify, locate, and evaluate children with disabilities or children who are reasonably suspected of having disabilities regardless of their severity.[81]   After identifying that a child with a disability is eligible under the IDEA, a school district team of professionals will develop an individualized education program (IEP) for the child that meets the requirements of state and federal law and regulations.[82]

Homeless children are defined under McKinney-Vento as those who "lack a fixed, regular, and adequate nighttime residence."[83] This includes children who "are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason ..."[84] If a child is determined to be eligible under the IDEA and is homeless under McKinney-Vento, the school district where the child was last enrolled is the "school of origin," and must immediately

---

[79] 20 U.S.C. § 1401(3).

[80] 34 CFR 300.8(c)(1); 20 U.S.C. 1401(9).

[81] 20 U.S.C. § 1412(a)(3) (emphasis added); 34 C.F.R. § 300.111; Rules of the Arkansas Dept. of Education, Special Education and Related Services, 3.0 Child Find, 3.01.1.

[82] 34 CFR 300.17.

[83] 42 U.S. Code § 11434a(2).

[84] *Id.*

enroll the child and provide the special education and related services under the child's IEP.[85]

The Department is responsible for overseeing district compliance with McKinney-Vento.[86]

Eligible children and their parents are afforded procedural and substantive rights under the IDEA concerning the provision of special education program and related services. Procedural inadequacies are violations if they:

- impede the child's right to a FAPE;
- significantly impede the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the parents' child; or
- cause a deprivation of educational benefits.[87]

A district must develop a student's IEP pursuant to IDEA requirements, and be "reasonably calculated to enable the student to make appropriate progress in light of his specific circumstances."[88] The IDEA requires every IEP to include the following: (1) a statement of a student's present levels of academic achievement and functional performance; (2) a description of how a student's disability affects his or her involvement and progress in the general education curriculum; (3) annual goals that are measurable, as well as a description as to how progress toward stated goals will be measured; and (4) a description of special education and related services to be provided to student.[89] The failure of a school district to meet these requirements for a student's IEP is a substantive violation of the IDEA and a denial of FAPE. A student is entitled to compensatory education and services to remedy any educational or other deficits that result from the denial of FAPE.[90] Further, a failure to implement a student's IEP, if the failure is

---

[85] 42 U.S.C. Sec. 11432(g)(3)(D).

[86] 42 U.S.C. Sec. 11432(g).

[87] 20 U.S.C. § 1415(f)(3)(E)(ii).

[88] *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 197, L. Ed. 2d 335 (2017).

[89] 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(IV).

[90] *See School Comm. of Burlington v. Department of Education*, 471 U.S. 359, 374, (1985); *Parents of Student W. v. Puyallup School Dist., No. 3*, 31 F.3d 1489 (9th Cir. 1994) (ruling that "the hearing officer's ability to award relief

material, is also a denial of FAPE. The Ninth Circuit Court of Appeals defines a "material failure" as one that occurs "when there is more than a minor discrepancy between the services provided ... and those required by the IEP."[91]

Parents seek compensatory education to address Student's behavioral and academic regression, a revised IEP, and the provision of services that comply with the revised IEP. Parents also seek an order for the Department to provide training related to McKinney-Vento. As this Hearing Officer has no jurisdiction under McKinney-Vento, I decline to order the training requested. Parents argue that Student suffered academically as a result of the District's actions during the period of this due process complaint. However, they have not provided sufficient evidence that the missing days and enrollment inconsistency are linked to a regression in academics. Similarly, evidence of progress or regression in Student's therapy goals for this period are primarily generalized, anecdotal, and without supporting data.

However, there is a preponderance of evidence that District denied a FAPE to Student on multiple occasions in the due process period of this case. District caused Student to miss seven full days and one partial day when it either unenrolled Student or caused Parents to believe Student was unenrolled. Student's absences on August 30-September 1 are the result of Parents reasonably believing that Student was again unenrolled. District unenrolled and reenrolled Student twice before the Superintendent's letter challenging the application of McKinney-Vento. Even in the face of directives to the contrary from the Department, District again unenrolled Student on September 8, 2022. District has stated that it reenrolled Student in compliance with

---

must be coextensive with that of the court..."(citing *Cocores v. Portsmouth, NH, School Dist.*, 779 F. Supp. 203 (D. N.H. 1991)).

[91] *Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811 (9th Cir. 2007) (finding that 5 hours provided of 8-10 hours required is a material implement failure).

the Department's September 13, 2022, letter directing it to do so. However, that statement is disingenuous; it is clear from Stacks' and Truxler's words and actions unenrolling on the basis of residency was their primary objective, regardless of Student's IEP and in the face of Department directives. Further, over the five weeks covered by the due process complaint, including when Student was present at school, District only provided 510 minutes of related services of the 1,050 minutes required in Student's IEP, less than half. District substantively and materially failed to implement Student's IEP and thereby denied Student FAPE.

## VI.
## ORDER

District shall provide the following compensatory services to Student: 270 minutes of physical therapy, 30 minutes of occupational therapy, and 240 minutes of speech therapy to Student.

Parents' claims filed under § 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the McKinney-Vento Homeless Assistance Act are hereby DISMISSED.

## VII.
## FINALITY OF ORDER AND RIGHT TO APPEAL

The decision of this Hearing Officer is final. A party aggrieved by this decision has the right to file a civil action in either Federal District Court or a State Court of competent jurisdiction, pursuant to the Individuals with Disabilities Education Act, within ninety (90) days after the date on which the Hearing Officer's decision is filed with the Arkansas Department of Education.

Pursuant to Section 10.01.36.5, Special Education and Related Services: Procedural

Requirements and Program Standards, Arkansas Department of Education (2008), the Hearing

Officer has no further jurisdiction over the parties to the hearing.

**IT IS SO ORDERED.**

*/s/ Cheryl L. Reinhart*

Cheryl L. Reinhart
HEARING OFFICER

April 3, 2023